JSNISC

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

Case No. 11-1081
(3:09-CV-00554)

---

**FILED**

FEB 1 8 2011

U.S. Court of Appeals
Fourth Circuit

ROBERT C. SMITH

Appellant,

v.

EVB

and

Archie C. Berkeley

    Appellees

Case No. 11-1081
Appeal of Civil Action No. 3:09-CV-00554

2011 FEB 18 AM 11:10
U.S. COURT OF APPEALS
FOURTH CIRCUIT
RECEIVED

## INFORMAL OPENING BRIEF FOR PLAINTIFF-APPELLANT

COMES NOW, Appellant-Plaintiff Robert C. Smith ("Smith") seeking appellate review of orders issued by the Eastern District of Virginia in the case styled *Smith versus EVB and Archie C. Berkeley* (Dist. Ct. Case No. 3:09-CV-554).

## I. JURISDICTION

This appeal is taken from the Eastern District of Virginia's Richmond Division. The District Court assigned Case Number 3:09-CV-00554, and Chief Judge James R. Spencer presided over the matter in District Court. Therefore, this

Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1291.

Appellant seeks review of the following orders: Order of August 5, 2010 (Docket No. 57), Order of November 15, 2010 ( Docket No. 66) and Order of December 22, 2010 ( Docket No. 67). All of these orders relate to the issue of whether or not Plaintiff Smith should be required to pay attorneys' fees pursuant to a motion for attorneys fees filed by Appellees.

## II. TIMELINESS OF NOTICE OF APPEAL

Appellant timely noticed this appeal in the District Court on January 20, 2011 (Docket No. 68). This Notice of Appeal was properly filed within thirty days of the final judgment relating to Appellees motion for attorneys' fees issues on December 22, 2010, pursuant to Fed. R. App. P. 4(a)(1)(A).

## III. ISSUES FOR REVIEW

This case is already under appeal with this Court, Case No. 10-1873. The sole issues to be reviewed by this Court in this appeal are the Trail Court's several errors indicating that Smith did not timely file his responsive memorandum to Appellees' motion for attorney's fees **and** most importantly, the Trial Court's award of attorneys' fees to Appellees. Pursuant to the Trail Court's June 30, 2010 Order ( Doc. # 46), Smith timely filed an extensive legal memorandum in response to Appellees motion for attorneys' fees. However, the Court did not consider Smith's memorandum ( hereafter "Memo on Opposition") in rendering its decision to award attorneys' fees to Appellees. The Trail Court's decision to award

2

attorneys fees was clearly in error.

## IV. BACKGROUND

As noted, this case is already on appeal due to the Trail Court's error in sustaining Appellees motion to dismiss by stating in error that the BOG Note was not a debt as defined by the Fair Debt Collections Act. However, for the many reasons stated in Appellant Smith's appeal, the Court erred. Indeed, as Smith has brought to this Court's attention, EVB made repeated and exhaustive representations to the Trial Court that the BOG Note was not a consumer loan and thus not a debt under the FDCPA, all the while during the course of the Trial Court's proceedings, it was, with astonishing duplicity, also reporting to federal and state bank examiners that the BOG Note was a consumer loan and thus a debt under the FDCPA.

The Trail Court issued its order which is under appeal in Case No. 10-1873 on June 30, 2010. At the conclusion of the Court's Order, the Court stated "... the Court hereby DIRECTS EVB and Berkeley to file their costs and fees associated with the respective Motions with the Court within (20) days of this Order, and the basis for their requests. Plaintiff will have (14) days thereafter to respond." Notice the Court did not state Plaintiff shall file his response within 14 days of the date that Defendants filed their "costs and fees associated with the respective Motions with this Court." Smith is a pro-se litigant. Smith is not a member of the Court's Electronic Filing System ( ECF). On July 20, 2010, Appellees mailed their

memorandum in support of attorneys' fees to Smith. Pursuant to FRCP 6(d) and Local Rule 7 (F), Smith had until August 6, 2010 to file his memorandum in opposition to Appellees motion for attorneys' fees.

Smith is a pro-se litigant who has been a victim of fraud and other illegal acts by EVB. **(See Expose of these acts at : www.vatarpmoney.wordpress.com)**. EVB's illegal actions destroyed Smith's livelihood and have put tremendous stress on Smith and his family. Due to these crushing financial losses, Smith has had to represent himself[1] in massive litigation against EVB and its co-conspirator banks, while working full time to keep his family afloat. During the course of the litigation against EVB, Smith uncovered evidence of EVB collaborating with other entities and lenders to damage Smith and his companies and Smith and affiliates have brought several suits against other lenders. One such suit is a $ 17 million malpractice suit against W. Rand Cook, attorney for Smith's company, Piedmont Construction Services, LLC. As stated to this Court in Case No. 10-1873, Smith discovered that the very debt that EVB repeatedly informed the Hanover Court had not been paid, had been marked paid and satisfied on EVB's audited financial statements, reports to shareholders and certified to be paid under penalties of perjury to the Securities and Exchange Commission. Smith also discovered that

---

[1] Smith passed the Virginia bar in 1985, but never practiced law or even kept an active law license until shortly before he brought suit against EVB in June of 2009 and began to uncover the extent of EVB's fraud and illegal actions. Smith renewed his law license for the primary purpose of suing EVB.

4

Mr. Cook, his company's lawyer, was also Chairman of the Board of EVB and also represented EVB and PCS in the September 17, 2007 closing which paid off the PCS Notes. Mr. Cook was also a member of the loan committee that deliberated on his client, PCS's account. Mr. Cook did not disclose his dual representation to Smith or PCS, nor any of his intricate relationships with EVB.[2] Smith's discovery of these instances of fraud and corruption and the necessity of filing several time sensitive complaints[3] required tremendous physical time commitments, all the while Smith's livelihood was destroyed due to EVB's actions and refusal to release deeds of trust for paid off debt.[4] Smith, a single father of three children, representing himself against several large law firms, simply had to work around the clock, without little or no sleep for weeks on end to protect his and his family's interest. This resulted in Smith working through the night on multiple occasions. Since the time that EVB attempted to illegally foreclose on Smith's house, Smith had been experiencing chest pains and other worrisome medical conditions. After several occasions of working all night or most of the night for days on end, Smith began to experience more acute chest pains and

---

[2] Cook has admitted in answers to pleadings that he informed Smith at the September 17, 2007 closing that the PCS notes were paid in full in accord with the closing documents he prepared. Yet, immediately after the closing, the very bank for which he was Chairman of the Board stated that the PCS Notes **were not** paid. Cook's duplicity and conspiratorial acts with EVB ruined Smith's business.
[3] Several of these suits had pending statute of limitation deadlines
[4] EVB's fraud extended to other actions as stated in www.vatrapmoney.wordpress.com

became physically exhausted. On July 29, 2010, Smith was diagnosed with acute exhaustion by his family doctor. ( See Dr.s' Letter in Doc. # 59). In layman's speak, Smith was running on "2 cylinders," instead of 8, and had on several occasions, simply collapsed from exhaustion. It was during this time that Smith's memorandum in response to Appellees motion for attorney's fees was due on August 6, 2010.  Smith took every precaution and made every effort to comply with the Court's June 30, 2010 order.

Pursuant to his doctor's order, Smith was home from July 29 through through August 6, 2010, and was attempting [5] to rest in bed. Upon receiving his Doctors orders to stay home, not work, and to come back to receive more medical tests, Smith made arrangements to cancel all of his upcoming appointments. Smith had several court appearances scheduled and immediately contacted opposing counsel and continued all these matters.[6] Counsel for EVB was contacted on July 29, 2010 concerning an August 3, 2010 hearing in New Kent County Circuit Court in the matter of Piedmont Construction, LLC v. William Martin, Trusteee et

---

[5] Although Smith was physically unable to work at his normal frenetic pace, there was a certain amount of work that he could not escape. EVB and their counsel, Reed Smith refused to continue hearings in state court matters and insisted Smith appear despite their knowledge that he had been experiencing chest pains and received medical orders to stay at home under a physicians' care. EVB and Reed Smith, "smelled blood," and continued to pound Smith with paperwork and burdensome demands during this period in an "all out" effort to physically weaken and damage him.
[6] Smith had proceedings in the Circuit Court of the City of Richmond, the United States Bankruptcy Court and other forums. All opposing counsel was gracious, sympathetic and cooperative, except of course for Reed Smith and EVB.

al. Despite being informed of Smith's chest pains and other medical conditions

including receiving affidavits and notices from his doctor, counsel for EVB refused

to agree to Smith's motion to continue and insisted on a conference with the Court

during the time that Smith was literally bedridden with acute exhaustion. As

mentioned in Smith' Reply Brief filed with this Court filed on October 27, 2010 in

Case # 10-1873, Smith has exposed various fraudulent and illegal acts of EVB.

Rather than address the substantive issues that Smith has raised, EVB and their

counsel have engaged in an all attack on Smith to weaken him financially and

physically in hopes that they could emasculate him such that he could not pursue

his litigation against EVB. Pursuant to this strategy, during the proceedings in the

Trail Court, EVB filed over 1,800 pages of documents, which included Smith's

personal bank records it had obtained through a subpoena without telling Smith or

giving Smith a copy of the subpoena.[7]

On the morning of August 3, 2010, Smith while at home ( and in bed) called

the Trial Court and spoke to the Judge's law clerk and explained his medical

condition and asked for clarification as to when his brief was due and explained the

Court's June 30, 2010 Order was not particularly well written or clear on this issue.

---

[7] Smith has filed a motion for sanctions against the attorneys for Reed Smith, S. Miles Dumville and Alison Toepp in Circuit Court of Hanover County. Toepp, who issued the subpoena did not inform Smith of its existence and it is alleged that she did this purposefully such that EVB could dig through Smith's extremely personal bank records, without Smith's knowledge, which of couse EVB did. Much of these sensitive and personal bank statements were then posted via the internet on the Court's ECF filingsystem.

Smith specifically asked for clarification on this issue, and explained his position

that the brief was not due until August 6, 2010 pursuant to the Court's June 30,

2010 Order. The Court did not give Smith clarification on this issue. Smith

explained that he had written his Memo in Opposition , but that he simply had not

had the energy to review and edit it during the preceding  week.

On the morning of August 3, 2010, Smith while at home, without having the

benefit of his office equipment or files, filed a motion for extension of time to file

his response. ( Doc. # 55). The motion referenced an "Exhibit A," Smith's

"medical reasons,"  which were too be filed under seal. Smith did not have his files

at home with him and specifically told the court that he would be filing Exhibit A

under seal later when he hopefully had more energy and was back at his office

working.

The same day, while Smith was home resting, EVB's counsel filed a 78 page

objection to Smith's request for an extension and filed all of Smith's sensitive

medical records [8] over the Court's ECF that EVB and their counsel knew that

Smith  intended to file under seal. Smith's office called him at home to inform him

of the filing as EVB had sent a fax of the filing to Smith's office. ( Smith, is not a

member of the Eastern District of Virginia's ECF system). EVB's 78 page

response  was a continuation of EVB's litigation strategy to wear Smith out and

---

[8] When EVB objected to Smith's continuance on July 29, 2010, Smith had
submitted his Dr's notice and other affidavits to Judge's chambers in New Kent
with a copy to EVB's counsel.

weaken him physically. Since EVB's counsel had publically filed all of Smith's sensitive medical information with the Court regarding his medical condition, there was no need for Smith to continue to defy his doctors' orders by working and not resting.

Having been informed that EVB had contested his motion for an extension of time and the virulence in which they had done so, Smith had no choice but to defy his Doctor's orders and finish editing his Memo in Opposition such that it could be submitted on the due date, August 6, 2010, and Smith's 21 page memo was filed on August 6, 2010 ( Doc. # 58).

However, unbeknownst to Smith, who is not a member of the Court's ECF system, the Court issued an order on August 5, 2010 denying Smith's motion for an extension ( Doc. # 57). Smith did not receive notice of the Court's order until after he filed his brief on August 6, 2010. Although Smith had called the Court to let it know that "Exhibit A" would be filed later when Smith had more energy and had started to recuperate, the Court stated in its order that " no affidavits had been filed as of the time of this Order on August 5, 2010." Of course these affidavits had been filed in EVB's 78 page response issued 4 hours after Smith's motion for an extension of time had been filed of Smith's physical limitations. Smith revisited his doctor on August 5, 2010 for more tests and was told to cut back his schedule and workload. Smith remained at home working a more limited schedule for much of August.

9

On Monday, August 9, 2010, Smith filed his motion to file "Exhibit A" of his Memo in Opposition for an extension under seal, still not knowing of the Court's August 5, 2010 order. Immediately, upon receiving the Court's Thursday , August 5, 2010 order via mail, on Tuesday August 10, 2010 Smith filed: 1) motion for an extension of time due to excusable neglect pursuant to FRCP 6(b)(1)(B), 9 Doc. # 60, 2) a memorandum in support of its motion for an extension due to excusable neglect (Doc. # 62) and 3) a motion to alter the Court's August 5, 2010 Judgment Pursuant to FRCP (e) ( Doc. # 62).

Thus, from August 3, 2010 through August 10, 2010, Smith made every conceivable effort to comply and in fact did not comply [9] with the Court's June 30, 2010 order in filing his memo in Opposition to Appellees' motion for attorneys' fees. Nearly 100 days later, on November, 15, 2010, the Court issued an order (Doc.# 65) and opinion (Doc. # 66) denying all of Smith's motions, thus denying Smith's timely filing of his Memo in Opposition to Appellees' motion for attorneys' fees.

On December 22, 2010, the Court issued its order ( Doc.# 68) and its memorandum ( Doc. #69) granting Defendants' motions for attorneys fees. However, no where in the Court's opinion or memorandum does the Court articulate its reasons for granting Defendants' motions for attorney fees.

## V. ISSUES FOR REVIEW AND ARGUMENT

---

[9] August 6, 2010 was the deadline

I.     THE TRIAL COURT ERRED IN DETERMINING THAT SMITH'S MEMORANDUM IN OPPOSITION TO EVB'S MOTION FOR ATTORNEYS' FEES WAS NOT TIMELY FILED AND IN ADDITION ERRED IN ITS DECISION NOT TO ALTER ITS AUGUST 5, 2010 ORDER DENYING SMITH'S MOTION TO EXTEND TIME TO FILE HIS MEMORANDUM IN OPPOSITION TO EVB'S MOTION FOR ATTORNEYS' FEES.

Throughout the history of the proceedings in the Trail Court, Smith scrupulously adhered to the Federal Rules of Civil Procedure ("FRCP"), and as articulated in Smith's Appeal and Reply Briefs, Appellees <u>flagrantly violated</u> the FRCP. Smith has also adhered to the plain meaning of the Court's orders and twice has been penalized by the Trail Court due to the Trail Court's poor draftsmanship of its orders. For example, in the Trial Court's March 23, 2010 order, the Trail Court specifically states that EVB is Directed to file its answer to Smith's Amended Complaint within 7 days ( EVB violated the FRCP by not filing a timely answer, one of several of EVB's violations of the FRCP). The Trial Court's Motion allowed EVB the opportunity to re-file its Motion to Dismiss or for Summary Judgment (hereafter "Renewed Motion") after filing its answer. The Trail Court's order did not state that Smith could not file a response to EVB's Renewed Motion, in fact the FRCP **specifically** allow Smith to file a response. Indeed, EVB's Motion **specifically** stated the "<u>Rosebro v. Garrison</u>" standards (Local Rule 7 K), **specifically** allowing Smith the opportunity to respond via affidavits ( Local Rule 7K (3)). **This is exactly what Smith did, and introduced**

11

**affidavits and exhibits that proved that the entire time EVB was representing to the Trail Court that the BOG Note was a business loan, it was simultaneously representing to the federal and state bank examiners that the BOG Note was a personal consumer loan.** Yet, the Trial Court in its June 30, 2010 order chastised Smith for responding to EVB's Motion to Dismiss with affidavits that included new material not already put forth into evidence. ( See page 8, "Smith offers no legitimate justification for not presenting this evidence [before]." This begs the question: what's the point of filing a response with affidavits if the affidavits to be filed have to be comprised of evidence already introduced?  If the Court didn't want Smith to file a response to EVB's Renewed Motion, it should have clearly articulated this. It didn't and Smith should not be punished for an order that was inarticulately drafted. Smith cannot read the Court's mind. Although the Court's December 22, 2010 award of attorneys fees ( Doc. # 65 "Memorandum") gives no reason or rational for its award of attorneys' fees, presumably, it is because Smith responded with affidavits as directed in EVB's Renewed Motion to Dismiss.

Likewise, the Courts' November 15, 2011 Memorandum ( Doc. # 66) in support of its order denying the acceptance of Smith's Memo in Opposition  was equally muddled due to the unclear drafting of the Trail Court's  June 30, 2010 Order which simply stated, "Plaintiffs shall have fourteen (14) days thereafter to respond."  Thereafter what? Surely, if Plaintiffs filed their response on June 6th, as

12

opposed to June 20th, Smith would still have only 14 days "thereafter" to file his response. Of course Smith can only file his response after he has been served, logically the term "thereafter" **must** be interpreted as 14 days after service of process, which since Smith was served by mail, would be August 6, 2010 to file his Memo in Opposition timely.

In the Trial Court' November 15, 2011 memorandum, the Courts states "Plaintiff misunderstood the Court's June 30, 2010 Order directing him to respond to Defendants' Motions within fourteen days after receiving them. The fourteen day period set forth in the Order included the eleven days provided for in the local Rules and three additional days provided for in the Federal Rules of Civil Procedure." Again, Smith can't read the Court's mind. The Court could have easily written the order to state that Smith shall respond to the order in accord with Local Rule 7 (F) 1, plus an additional three days, exactly what the Court wrote its intent was in its November 15, 2011 memorandum opinion. It didn't do this, it easily could have. The Courts' November 15, 2011 order is further muddled by citing the Local Rules of Court. Smith is a pro-se client. The Court acknowledged that Smith is a pro-se client in its January 26, 2010 order ( Doc. # 14). As noted above, Local Rule 7 (K) clearly states that in a motion filed against a pro-se litigant, the pro-se litigant shall have 20 days to respond, giving Smith until August 10, 2010 to file his response. The Trial Court cited the wrong Rule. Clearly Smith filed his brief timely.

13

11.   TO THE EXTENT THAT SMITH'S MEMORANDUM IN OPPOSITION OF EVB'S MOTION FOR ATTORNEYS' FEES WAS NOT TIMELY FILED, THE TRIAL COURT ERRED IN NOT GRANTING SMITH'S MOTION FOR ADDITIONAL TIME FOR FILING DUE TO EXCUSABLE NEGLECT PURSUANT TO FRCP 6 (b)(1) (B).

What else could Smith do?

He called the Court and explained his health issues. He asked for a clarification on the filing deadline and none was given. He filed a motion to extend his filing date. He told the Clerk he would be filing the exhibits under seal when he had the energy. That very day, EVB filed many of the exhibits Smith was going to file under seal.

It is interesting to analyze the Court's treatment of Smith as to how it treats EVB. EVB is represented by Reed Smith, a law firm of 1,600 lawyers. On April 26, 2010 Smith moved ( Doc. #36) to strike EVB's Reply Brief, clearly filed 3 days late in violation of the FRCP. EVB filed a motion to extend time pursuant to FRCP 6 (b) and EVB's excusable neglect. EVB utilized a law firm with 1,600 lawyers, its motion was filed after the deadline and after Smith had filed his Motion to Strike, calling attention to Reed Smith's error, yet the Court granted EVB's motion. Smith, on the other hand was sick, and in bed, yet still filed for an extension of time before the deadline was due as a preventive measure, because of the uncertainty of the deadline due to the Court's poor draftsmanship of the June 30, 2010 order. Furthermore, the Court was in no hurry to decide the attorneys'

14

fees issue, as it did not deliver its order on the subject until four months later, certainly, there could be no possible prejudice against EVB for Smith filing his Memo in Opposition three days late. The way the Court treats the two litigants is striking. The 1,600 member law firm gets a pass, and the pro-se litigant, bed ridden with no staff who could not have been more pro-active ( and whose "late filing" could not be prejudicial to EVB)  gets "hammered." This pattern of different treatment permeates the entire history at the Trial Court. As articulated in Smith's Appeal Brief, Appellees repeatedly violated the FRCP during the Trial Court proceedings (constantly introducing new evidence and theories of law, missing deadlines, asserting affirmative defenses late, not filing proper pleadings, etc.), compared to Smith, who never violated the FRCP.

### III.    THE TRAIL COURT ERRED IN ITS DECEMBER 22, 2010 ORDER GRANTING APPELLEES' MOTION FOR ATTORNEYS' FEES.

The Trail Court offers absolutely no justification or rational as to why Smith should be liable for a part of Defendants' legal fees. In its December 22, 2010 memorandum in support of its order, the Trail Court merely states: "The Court finds that EVB is entitled to attorneys' fees, but that the amount requested is unreasonable." ( Page 5 of December 22, 2011 Order, Doc. # 67).  Because the Court offers no discussion on "why" Defendants are entitled to legal fees and "what" Smith did "wrong," Smith simply offers his August 6, 2010 Memorandum in Opposition to [Defendants'] Motion For Attorneys' Fees  which is incorporated

15

herein and attached as **Exhibit A** and is a detailed legal and factual analysis as to

why the Court erred in granting Appellees' Motion For Attorneys' Fees.

### E. Conclusion

As stated in Smith's Memo in Opposition, the Court clearly erred in granting

Appellees' motion for attorneys fees. Ironically, the conduct of Smith that the

Court presumably found objectionable was the period of time when Smith was

specifically given the opportunity to respond to EVB's Renewed Motion, and

Smith filed affidavits of subpoenaed documents from EVB that established EVB's

repeated misrepresentations to the Court. As noted, EVB filed over 1,800 pages

with the Court repeatedly stating the BOG Note was a business debt, and Smith put

into evidence subpoenaed documents from EVB illustrating that at the exact time

EVB was making these representations to the Court, it was informing federal and

state bank examiners that the BOG Note was a personal consumer loan. EVB's

"forked tongue" should not be condoned by allowing it to be reimbursed for its

attorneys fees by the one who exposed its incredible deceit.[10]

---

[10] As noted in Smith's Opening and Reply Brief in Case No. 10-1873, EVB's litigation strategy against Smith has been to evade and avoid the very serious fraud allegations Smith has leveled against EVB, and to discredit Smith "at all costs." This conduct continues: on February 10, 2011, EVB served Smith (late in the day) a 300 page defamation complaint, and also notified Smith of a preliminary injunction the next morning at 9:00 am. EVB requested the Court shut down Smith's website, www.vatarpmoney.wordpress.com, which openly criticizes EVB for various alleged acts of corruption and fraud, utilizing public records, business analysis and political commentary. On February 17, 2011, EVB threatened Smith with a show cause action for exercising his free speech rights to expose EVB's

## VI. RELIEF REQUESTED

Smith respectfully moves this Court to overturn the Trail Court's December 22, 2010 Order awarding attorneys fees.

## V. PRIOR APPEALS

Appellant has not filed any prior related appeals other than the Appeal in Case No. 10-1873.

**DATED:**     February 16,  2011

Respectfully submitted,

Robert C. Smith
2800 Patterson Avenue; Suite 101
Richmond, Virginia 23221
Tel: (804) 377-8848, ext. 4
Fax: (804) 377-8851

---

fraud. EVB has spent extraordinary resources in its attempt to avoid giving sworn testimony concerning the accuracy and reporting of its financial statements and other allegations of fraud and corruption as reported on the website. As of this filing, EVB has refused to respond to deposition notices and to turn over documents pursuant to legitimate discovery requests. EVB is a bank that accepted $24 million in TARP Money and has defaulted on its payment obligations to the tax payers under the TARP Money program. Ironically, instead of answering Smith's detailed analysis of EVB's fraud and corruption, EVB continues to refuse to give sworn testimony and spends extraordinary amounts of shareholder assets to "shut down" Smith's political commentary in an effort to conceal what Smith (and his forensic accountants)  concur is clearly wrongful conduct. The documents supporting these allegations are public record and are listed on the website.

17

## CERTIFICATE OF SERVICE

I hereby certify that on this ⎨7⎬th day February 2011, a copy of the foregoing **INFORMAL OPENING BRIEF** was filed with the Clerk of the Court, and I also certify that I have served same by facsimile, addressed to the following:

S. Miles Dumville
**Reed Smith LLP**
Riverfront Plaza – West Tower
901 East Byrd Street; Suite 1700
Richmond, VA 23219
**Counsel for EVB**
Telephone: (804) 344-3400
Fax: (804) 344-3410

Michelle A. Mulligan
**MercerTrigiani**
116 South Second Street
Richmond, VA 23219
**Counsel for Berkeley**
Telephone: (804) 344-1504
Fax: (804) 644-0209

Robert C. Smith
2800 Patterson Avenue
Suite 101
Richmond, Virginia 23221
Tel: (804) 377-8848, ext. 4
Fax: (804) 377-8851

18

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

Richmond Division



ROBERT C. SMITH,

       Plaintiff,

                                     Civil Action No.: 3:09cv554

v.

EVB, et al.,

       Defendants.


**PLAINTIFF'S ROBERT C. SMITH'S  MEMORANDUM IN OPPOSITION TO EVB'S MOTION FOR ATTORNEY'S FEES**

      COMES NOW Plaintiff Robert C. Smith ("Smith") and submits the following Memorandum in opposition to EVB's Motion For An Award of Attorney's Fees and states as follows:

### INTRODUCTION

      On July 20, 2010, Defendants EVB and Berkeley filed a motion for attorneys' fees. Defendants acknowledge that the standard for sanctions liability under the FDCPA are the same as those found under Rule 11 of the FRCP. The language of Rule 11 requires that an attorney

1

conduct a reasonable investigation of the factual and legal basis for his claim before filing. See Cleveland Demolition Co. v. Azcon Scrap Corp., 827 F.2d 984, 987 (4th Cir.1987). Rule 11 "does not seek to stifle the exuberant spirit of skilled advocacy or to require that a claim be proven before a complaint can be filed." Cleveland Demolition Co., 827 F.2d at 988. "Rule 11 does not require that a judge or jury agree with a plaintiff's allegation. For Rule 11, purposes, the allegation merely must be supported by some (emphasis) evidence." Brubaker v. City of Richmond, 943 F. 2d 1363 (4th Cir. 1991). " Unless the Plaintiffs had no factual basis for their allegation, [the Court] cannot conclude that plaintiffs violated Rule 11 factual inquiry requirement" and are not subject to sanctions. Id. "[C]reative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment." Davis v. Carl, 906 F.2d 533, 536 (11th Cir.1990). A prefiling investigation of the law will not violate Rule 11 and the attorney will not be liable for sanctions unless the complaint has "absolutely no chance of success under the existing precedent." Cleveland Demolition Co., 827 F.2d at 988.

Sanctions are a two step process. Once the Court determines that Rule 11 has been violated, the amount of sanction, if any, is determined. "In calculating the sanction, a district court should bear in mind that the purposes of Rule 11 include "compensating the victims of the Rule 11 violation, as well as punishing present litigation abuse, streamlining court dockets and facilitating court management." In re Kuntsler, 914 F.2d at 522. The amount of a monetary sanction, however, should always reflect the primary purpose of Rule 11--deterrence of future litigation abuse. Id. at 522-23. Accordingly, a district court should expressly consider the four factors adopted by this circuit in In re Kuntsler: "(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the Rule 11 violation." Id. at 523 (citing White v. General Motors Corp., 908 F.2d

675 (10th Cir.1990)). <u>Brubaker v. City of Richmond</u>, 943 F. 2d 1363 (4th Cir. 1991). Pursuant to

the following analysis, there are no grounds for sanctions against Smith and Defendants motion

for sanctions must be dismissed.

## I.    PROCEDURAL HISTORY

On September 4, 2009, Plaintiff Smith filed a Complaint against Defendants' EVB and

Berkeley under the Fair Debt Collection Practices Act ("FDCPA"). Berkeley was served a copy

of the Complaint at a time in which he was active counsel for EVB. Berkeley filed a timely

answer on October 14, 2009. FRCP 8 ( c) (1) states that a defendant responding to a pleading –

the Complaint-"<u>must</u> affirmatively state any avoidance or affirmative defense, including

estoppel." Berekley did not raise the affirmative defense of estoppel in his Answer. EVB did not

file an answer to the Complaint. On December 23, 2009, Defendants filed a Joint Motion To

Dismiss, pursuant to rules 12 (b) (6) and 56. (hereafter the "12/23 Motion").

Defendants' memorandum in support of its 12/23 Motion  was  4.5 pages in which EVB

and Berkeley presented their version of the facts. Defendants  stated that the original Piedmont

Loan made in June of 2004 was a commercial line of credit and  that the BOG Note "refinanced"

the Piedmont Loan.[1]   Defendants' sole argument in its Motion to Dismiss was that based on the

facts alleged and the facts Defendants' proffered, there was no evidentiary support for Smith's

claim that the BOG Note was a "debt" as defined by the FDCPA. EVB's entire legal argument

(including its citation of the definition of a debt under the FDCPA) consisted of 240   words and

is summarized on page 5 where Defendants stated:

> "...none of the monies owed by Smith under the 2006 Loan were
> used for "personal,  family, household purposes." Instead, the 2006 Loan
> repaid an obligation of Piedmont Construction LLC and was otherwise used

---

[1] EVB made several other arguments  alleging that the BOG Note was used for business purposes unrelated to the 2004 Piedmont Loan.

3

to support two other businesses owned by Smith- Chartwell Capital and
Piedmont Construction Services, LLC.

> Thus, there is no evidentiary support, nor can there be developed in
> discovery, for Smith's false allegation that the 2006 Loan is a "debt" under
> the Act."

Defendants made no arguments of law. The entire 12/23 Motion was based on factual

evidence introduced by Defendants that the <u>net proceeds</u> of the BOG Note were not used for

personal, family or household purposes, and thus not a "debt" as defined by the FDCPA.

Defendants did not raise any estoppel arguments in its 12/23 Motion.

On December 30, 2009, Smith filed a motion for leave to amend his complaint and an

amended complaint.[2] Neither EVB nor Berkeley filed an answer to Smith's Amended

Complaint. On January 12, 2010, Smith filed a response to the 12/23 Motion in which he

disputed via affidavits all of Defendants' factual allegations in its 12/23 Motion. Defendants filed

a reply memo on January 19, 2010. The Court issued an order on January 26, 2010 stating that

Smith had the right to amend his response to Defendants' 12/23 Motion. The Order specifically

gave Defendants the right to reply to Smith's Amended Response, but did not allow for Smith to

respond to Defendants' Reply Memo. Smith filed his Amended Response on February 12, 2010.

Defendants' concluded their filing of their Reply Memorandum and exhibits on Friday February

19, 2010. (hereafter the "2/19 Filings"). Smith was further precluded from replying to

Defendants' Reply Memo by Local Rule 7 (F) (1) which limited Smith to one responsive memo

to Defendants' 12/23/2010 Motion. The 2/19 Filings comprised 1,451 pages which included

an ancillary motion to file some of the exhibits ( Smiths's personal banking records) under seal.

Defendants raised the affirmative defense of estoppel for the first time in the 2/19 Filings, less

than one week from a scheduled February 26, 2010 motions hearing on Defendants' 12/23

Motion. On February 22, 2010, Smith filed a motion objecting to his personal banking records

---

[2] Smith had had the benefit of a limited amount of discovery.

being filed with the Court,[3] but not to such information being filed under seal. The February 26,

2010 hearing was not an evidentiary hearing. At the time of the hearing, all evidence had been

submitted to the Court pursuant to the pleadings previously filed. On March 23, 2010, this Court

issued an order granting Berkeley's Motion For Summary Judgment. The Court's decision was

based entirely on an estoppel argument (discussed below) that Defendants in violation of FRCP 8

(C) did not raise until the 2/19 Filings, less than a week before the hearing. The Court

specifically denied EVB's Motion to Dismiss and ordered EVB to file an Answer to Smith's

Amended Complaint within 7 days.   The Court specifically stated : "Mr. Smith is entitled as a

matter of right to amend his complaint against this Defendant." "…EVB, like Mr. Berkeley,

argues that allowing amendment would be futile, however, "the doctrine of futility only applies

when the plaintiff seeks leave of court to amend and does not have a right to amend." Galustain

v. Peter, 591 F. 3rd 724, 730 (4th Cir. 2010)." On March 30, 2010, EVB filed its answer to

Smith's Amended Complaint and also filed a new Motion To Dismiss or in the Alternative For

Summary Judgment (hereafter "Renewed Motion"). This motion renewed allegations that the

BOG Note was not a "debt" under the FDCPA and relied on its previous memorandum in

support of its position filed on December 23, 2009 and offered no new evidence or new

allegations. EVB's renewed Motion specifically stated that Smith was "entitled to file a response

opposing" the Renewed Motion, that Smith "must identify all facts stated by Defendant" which

Smith disagreed and that Smith "must set forth his version of the facts by offering affidavits" and

that Smith "was entitled to file a legal brief in opposition" to EVB's Renewed Motion. (See page

2 of Renewed Motion). On April 16, 2010 Smith filed a Response in Opposition to EVB's

Renewed Motion. Having not had the opportunity to respond to Defendants' estoppel arguments

---

[3] The FRCP and Local Rules did not allow Smith to respond to Defendant's estoppel argument asserted in the 2/19
Filings, but the Rules did allow Smith to Reply to EVB's motion to file Smith's banking records with the Court.

first raised in the 2/19 Filings, Smith's Response in Opposition was replete with details disputing the factual allegations underlying Defendants' estoppel arguments; these details were supported by affidavits by Smith and his accountant Hurst and included numerous additional exhibits. Smith's Response also included a detailed argument that the BOG Note was a "debt" as defined by the FDCPA as a "stand alone" transaction and a debt under the "end uses" test. Concurrently, Smith filed a motion to alter the Court's March 23, 2010 Judgment under FRCP 59(e) in respect to Berkeley. Smith's "59 (e)" argument requested reconsideration of the Court's March 23, 2010 Order based primarily on the fact that Berkeley had violated the FRCP by failing to plead an "estoppel" defense in its answer and subsequent pleadings, thus Smith was prejudiced and unfairly surprised by Defendants' estoppel defense. Smith also pled in his "59 (e)" motion that the proper legal standards enumerated in <u>Perk v. Worden</u>, 475 F. Supp. 2d 565 (E.D. Va. 2007) were properly applied.

After these issues were briefed, a hearing was held on June 17, 2010, and the Court issued an Order on June 30, 2010 in which it sustained EVB's Renewed Motion and dismissed Smith's 59(e) Motion. The Court ruled that Defendant's quasi-estoppel argument introduced in its 2/19 Filings prevented Smith from claiming that the BOG Note was a "debt" as defined by the FDCPA, and that the new evidence that Smith submitted in his 4/16/2010 Response to EVB's Renewed Motion should have been introduced prior to the February 26, 2010 hearing and or the March 23, 2010 Order. On July 20, 2010, Defendants' filed a motion for attorney's fees. On July 29, 2010, Smith filed a notice of appeal.

## II.        ANALYSIS

a.    **EVB'S Bad Faith and Misrepresentations to the Court**

During the pendency of this action, EVB and its counsel consistently and repeatedly represented to this Court that the BOG Note was a business loan and not a consumer loan. EVB and its counsel repeatedly derided Smith and accused him of making false statements in his claim that the BOG Note was a consumer loan. On April 16, 2010, Smith filed an extensive response to EVB's Renewed Motion which included uncontroverted evidence that EVB represented to its shareholders, the Federal Reserve and the Virginia Bureau of Financial Institutions that the BOG Note was a consumer loan and thus a debt as defined by the FDCPA. (See Ex. F: "EVB Loan Statement" and Exhibit G: "EVB Loan Line Sheet" of Smith's April 14, 2010 affidavit). As stated in ¶ 57 of Smith's affidavit and during the June 17, 2010 hearing, throughout the pendency of this suit when Defendants repeatedly represented to this Court that the BOG Note was a business loan, EVB simultaneously represented to federal and state bank examiners and its shareholders that the BOG Note was a consumer loan. Most telling, after Smith filed his April 16, 2010 response to EVB's Renewed Motion, Defendants had multiple opportunities to come forward and explain these misrepresentations to the Court and has left them unanswered. Certainly Defendants, having are precluded and estopped from their argument that Smith has acted in bad faith <u>for alleging the exact same facts that EVB represented to its bank examiners and shareholders</u>. Rule 11 (b) (4) states that "denials of factual contentions are warranted on the evidence or, ....are reasonably based on belief...." Defendants knew that during the pendency of this case, EVB was representing one set of facts to the Court and <u>the exact opposite set of facts to its bank examiners.</u> For this reason alone, Defendants' (EVB and Berkeley) Motion for Attorney's Fees should be dismissed.

**b.     Smith's Suit Was Brought in Good Faith Supported By Known and Uncontroverted Facts and Existing Law.**

EVB's entire argument for attorney's fees is based on Smith's "bad faith" in bringing an action under the Fair Debt Collections Act ("FDCPA"), but the facts and law belie this accusation. The sole issue before the Court was whether the BOG Note was a debt as defined by the FDCPA. Smith produced sufficient allegations of material facts to support his allegation that the BOG Note was a debt as defined by the FDCPA; however, based on the Court's opinion, these facts should have been set forth prior to the February 26, 2010 hearing ( or March 23, 2010 Order) on EVB and Berkeley's 12/23 Motion. Thus, for a procedural technicality, Defendants' 12/23 Motion likely would have been dismissed. Smith has filed a notice of appeal.

**(1)     Legal and Factual Analysis that BOG Note was A "Debt" as a Stand Alone Instrument/Note Without the Need to Consider the Characterization of Previous Notes/ Debts**

(a) The BOG Note specifically states that it is a debt as defined by the FDCPA which states "...the term 'debt' shall mean any obligation or alleged obligation of a consumer to pay money out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation had been reduced to judgment." 15 U.S.C. § 1692 (a) (5). The BOG Note Disbursement Request and Authorization ("DRA") form clearly has a "box" checked that states that the "Primary Purpose of the Loan" is for "Personal, Family or Household Purposes" As stated in Smith's January 12 Memorandum (which Smith affirmed by affidavit), the DRA was drafted entirely by the Bank of Goochland.[4] EVB claims that Smith brought his action in bad

---

[4] The BOG DRA was drafted entirely by the Bank of Goochland and the personal, household and family boxed checked by the Bank of Goochland. Smith repeatedly made the argument that the Defendants' quasi-estoppel argument against Smith prevented Defendants from asserting that the BOG Note was not a personal loan and thus a "debt" as defined by the FDCPA.

faith because the BOG Note was not a debt, yet the very instrument EVB claimed was not a "debt," drafted in its entirety by the Bank of Goochland, states unequivocally that it is.

(b)    EVB represented to multiple third parties including its bank examiners that the BOG Note was a consumer loan and thus a debt as defined by the FDCPA. In fact, before Smith filed his Amended Complaint, pursuant to a September 15, 2009 request for production of documents, EVB had turned over to Smith the EVB Loan Statement, the EVB Loan Line Sheet and other information explicitly confirming and acknowledging to Smith that the BOG Note was a consumer loan.

(c)    Smith provided information provided from the Bank of Goochland stating that the BOG Note was covered under the Fair Credit Billing Act. ( See Ex. E to Smith's April 14, 2010 affidavit.) federal legislation that is specific to consumer loans given to Smith by the Bank of Goochland when the BOG Note was executed.

(d)    Smith provided testimony in his affidavit that he specifically requested the Bank of Goochland make him a consumer loan that would be protected by federal consumer protection legislation.

(e)    Smith provided an affidavit from his accountant, Carroll Hurst that specifically acknowledged and reaffirmed that the Bank of Goochland did not lend any money to Piedmont Construction or on Smith's house as the BOG Note was made to Smith and Smith then lent money to Piedmont. This fact carries important tax and GAPP accounting implications illustrating the debt was treated as "personal" and contradicts material facts alleged by Defendants.

(f)    Smith provided affidavits from Mr. Hurst that Smith treated the BOG Note on his personal tax return as a personal and not a business loan.

(g)    Mr. Hurst's April 15, 2010 affidavit provided extensive and detailed tax and accounting analysis detailing the characterization and the net proceeds of the BOG Note in which Mr. Hurst concluded that the loan proceeds, characterization and tax treatment of the BOG Note was personal.

(h) Mr. Hurst also delineated federal tax and accounting elections that taxpayers may take that determine the purpose and use of a loan's proceeds based on compliance with certain accounting and tax rules which Smith was entitled to elect based on the use and tax treatment he afforded the BOG Note. Thus, even if the 2004 Wilton Loan was a business loan at one time, federal tax law allows for such a debt to be re-characterized as a personal debt based on tax election and use of the property which Smith was qualified to elect.

Every possible analysis of the BOG Note as a stand alone entity indicated that it is a debt as defined by the FDCPA, it was characterized as a debt, EVB represented it to be a debt and an extensive tax and accounting analysis by a well qualified and notable tax and accounting expert stated in an affidavit that in all respects under all conceivable scenarios, the BOG Note was used for personal and not business purposes. Per Rule 11 standards, Smith's allegation that the BOG Note was a debt was supported by sufficient factual allegations and a basis in law to support his claims. Furthermore, it cannot be said that Smith had "absolutely no chance for success under existing precedent." Cleveland Demolition.

### (2) End Uses of BOG Note

Throughout Smith's pleadings in arguing that the BOG Note was a "debt" as defined by the FDCPA, Smith' relied heavily on this Court's decision in Perk v. Worden, 475 F. Supp. 2d 565 ( E.D. Va. 2007), a case with a remarkably supportive factual pattern to Smith's contention

10

that the BOG Note was a "debt' as defined by the FDCPA. " In determining whether an

obligation falls under the ambit of consumer protection statutes, this district has held that the

FDCPA "is concerned with the substance of the transaction as opposed to the form." Perk v.

Worden, 475 F. Supp. 2d 565, 569 (E.D. Va. 2007). The Court in Perk referenced numerous

other Circuits' holdings, recognizing that "[t]he Act characterizes debts in terms of end uses,"

and neither the lenders' motives nor fashion in which the loan is memorialized are dispositive of

th[e] inquiry." Id. (quoting Bloom v. I. C. Sys., Inc., 972 F. 2nd 1067, 1069 (9th. Circuit 1992).

In Perk, the Plaintiff used a corporate credit card for personal purposes. There was no dispute

that the debt was in the name of a corporate entity, the card was for business purposes, and that

the Plaintiff had represented that the debt would only be used for business purposes. Yet, the

Court ruled that the fact that the loan was characterized as  business debt was not material to the

issue of whether the credit card debt was a debt as defined by the FDCPA. The Court ruled that

how a debt was "characterized' was not dispositive to the issue, it was how the proceeds of the

debt were used that was the dispositive factor and determining factor.

     Smith argued a rich detail of facts supported by affidavits that the end uses of the BOG

Note were for personal, household and family purposes. Among the facts that Smith presented

was Mr. Hurst's detailed analysis and conclusion that the end uses of the BOG Note was for

personal, household and family uses by tracing how all the proceeds used in the acquisition of

Smith's house and subsequent loans, including the 2004 Piedmont Loan, were classified for

federal income tax and GAPP accounting purposes. The dispositive issue in characterizing the

nature of an obligation is the treatment of such obligation on the obligator's federal tax return. In

re Robb, 23 F. 3rd 895, 898 (4th Cir. 1994). In addition, Smith proffered other uncontroverted

evidence that the end uses of the BOG Note were applied to Smith's residence, where Smith had

11

lived continuously with his children since 2003, as well as Hurst's testimony that per Smith's tax returns, Piedmont had never conducted or been engaged in any business and that it had always been treated as a disregarded entity for federal tax purposes.

In fact Defendants offered no assertions of fact that were not firmly rebutted by Smith and Hurst affidavits that the <u>end uses</u> of the BOG Note were for personal, household or family purposes. In the Court's March 23, 2010 and in its June 30 Memorandum Opinion, the Court did not find issue with Smith's detailed analysis that the end uses of the BOG Note were used for personal, household or family purposes. The Court's Memorandum Opinion was <u>based solely on Defendants' estoppel argument</u>. ( The Court's Memorandum Opinion suggests that even though the end uses of the BOG Note were for personal, family and household purposes, the doctrine of quasi estoppel precludes Smith from stating that the BOG Note is a consumer loan based on the Wilton Loan DRAs).

Smith's and Hurst's analysis of the "End Uses" tests indicate that the end uses of the BOG Note was used for personal, family of household purposes. Per Rule 11 standards, Smith's allegations that the end uses of the BOG Note were for personal, household or family purposes are supported by sufficient factual allegations and a basis in law to support his claims. Furthermore, it cannot be said that Smith had "absolutely no chance for success under existing precedent" by arguing the "end uses" tests. <u>Cleveland Demolition</u>.

### (3) Defendants' Estoppel Argument

Defendants did not raise its estoppel argument until page 9 of its February 19, 2010 response which was one of many arguments made in their Reply Memo. Defendants argued and the Court ultimately ruled that Smith was estopped from claiming that the BOG was a consumer

loan and thus a debt as defined by the FDCPA because Smith had represented that the 2004

Piedmont Loan was a business loan on the Disbursement Request and Authorization Forms

("DRA's) Smith executed as manager of Piedmont Construction which stated that the primary

purpose of the loan was for business purposes because a box adjacent to the word "Business"

was checked on each of the DRA forms. The Court stated that the law does not permit Smith to

execute loan documents in order to receive benefits and later content that the signed documents

were incorrect. The Court also stated that " it would be unconscionable to permit the offending

party to maintain an inconsistent position from which it has derived a benefit or which it has

acquiesced." (Page 5 , 3/23/10 Memorandum Opinion. Thus despite the facts that Smith and

Hurst proffered via their affidavits that would have been sufficient to overrule Defendants' 12/23

Motion to Dismiss, the Court determined that the doctrine of quasi-estoppel prevailed and

Defendants Berkeley's Motion for Summary Judgment was granted.


(a)    **Estoppel Argument Defense**

Up until the 2/19 Filings, all of Defendants arguments relating to the 2004 Piedmont

Loan were based on this loan being "characterized" as a business loan. Defendants rationalized

that since the 2004 Wilton Loan was "characterized" as a business loan, and the BOG Note was

used[5] to pay off the 2004 Wilton Loan, then under the "End Uses" test, the BOG Note was a

business loan. Smith argued throughout the pleadings that just because the 2004 Piedmont Loan

may have been characterized as a business loan, did not make it a business loan, and that the

proper analysis of whether a loan is a "debt" is how the proceeds are used. Defendants had never

stated that Smith had checked the "business" box on the Wilton DRAs, and Smith had never

deemed it necessary to state that he didn't check this box because 1) the issue had never been

---

[5] The BOG Note was made to Smith who paid off the 2004 Piedmont Loan.

raided and 2) he presumed that it was acknowledged that the Bank of Goochland checked the business box. ( See Smith 7/28 Affidavit attached hereto as <u>Exhibit A</u>). Prior to the 2/19 Filings, Defendants had filed 8 pleadings and responsive pleadings with the Court, and had not raised the quasi-estoppel argument. This argument was first raised  in a bewildering 1,451 pages of documents filed with the Court. Smith is a pro-se litigant and not a member of the Eastern District of Virginia Court and thus does not receive instantaneous filings over the Court's ECF system. Thus by the time Smith had notice of Defendants' 1,451 page filing, there were only  4 full business days until the February 26, 2010 hearing. The February 26, 2010 was not an evidentiary hearing.

      FRCP 8 (c) states that a defendant <u>must</u> affirmatively plead the estoppel defense. In <u>Grabill v. Williams</u>, 990 F. Supp 442 (E.D. Va 1998), the Court stated " Raising the defense at this late hour results in unfair surprise and inadequate opportunity to prepare to rebut the defense. The Court found that defendants "waived the defense" and that the plaintiff "would be prejudiced to permit the defense to be asserted at this time." FRCP 8 ( c) requirement stating that defendants must affirmatively assert their defense was created to prevent "unfair surprise" and "prejudice to the other party" <u>Brinkley v. Harbour Rec. Club</u>, 180 F 3rd 598 (4th Circuit 1999).

      Smith is a pro-se litigant (with no legal staff),  single father of three children with a demanding work schedule. Besides not being allowed by the Rules to respond to Defendants new argument, Smith simply didn't have the time or resources to respond to the 2/19 Filings in any detail, which including searching files that were in storage to rebut Defendants' new arguments before the February 26, 2010 hearing.   In the 2/19 Filings, Defendants alleged that Smith had "represented and alleged"  that the 2004 Piedmont Loan was a business loan, but failed to represent to the Court that Smith did not check the "box" on the DRAs ( the box was checked by

the Bank of Goochland), that Smith had represented in extensive documentation during the underwriting of the loan that the BOG Note was for personal purposes and that the Bank of Goochland even characterized the loan on its books as a personal "family" loan on its internal reporting. As stated in his 7/28/10 affidavit, Smith had never checked "any boxes" on any previous DRA, this function had always been a bank performed function, and always marked without any discussion or input from the Borrower. Smith viewed the " checked box" as an internal Bank of Goochland function, and did not realize until the Court's March 23, 2010 Opinion Memorandum that it was presumed that he had "checked these boxes."

The Court's June 30 Opinion Memorandum states " Smith asserts that he and his accountant have submitted additional affidavits raising genuine issues of material facts in dispute, including the assertion that Smith did not check the business purpose box in the 2004 Loan DRAs, or that they were checked when he signed them. Smith presents no legitimate justification for not presenting this evidence in any of his numerous pleadings prior to the Court's judgment, or at any oral argument on the Defendant's Joint Motion to Dismiss." [6]

However, Smith did make this argument before the February 26, 2010 hearing. Prior to the February 26th hearing, Smith filed a response to Defendants' motion to file his personal banking records with the Court under seal [7] and specifically referenced that he did not check the business box on the DRA's by stating that the DRA's were contracts of adhesion, drafted entirely by the Bank of Goochland and listed a series of challenges to Defendants' newly raised quasi-

---

[6] As Smith was specifically given the opportunity to respond to EVB's Renewed Motion via affidavits, he was unaware that he had a duty to explain why he didn't present this factual evidence in detail prior to the Court's judgment and thus, of course did not state this reasoning in his Response to EVB's Motion To Renew or in his Motion To Alter the Court's Judgment. However, this reasoning is presented in his 7/28 affidavit attached.
[7] The FRCP allowed Smith to respond to this motion, but not to Defendants' 2/19 reply memo.

estoppel arguments. ( See page 3 of Smith's 2/22/10 Response and Footnote #2 ).[8]  As stated in

Smiths 4/14 Affidavit, due to his daughter's accident on February 26, 2010, Smith could not

devote any time or attention to this case until after the February 26, 2010 hearing..

The Courts' March 23, 2010 Order <u>specifically denied</u> EVB's 12/23 Motion  and ordered

EVB to file an answer.  There was nothing in the Court's order that preventing Smith from

opposing EVB's Renewed Motion, nor stating that Smith's could not introduce additional

evidence in opposition to a "renewed motion." In reference to its decision to grant Berkeley's

Motion For Summary Judgment, the Court stated that "Smiths' proffered evidence does not rebut

his awareness or understanding of his representations and warranties about the 2004 Loan," thus

suggesting the evidence that Smith would need to introduce to  rebut EVB's quasi-estoppel

argument, as the Court had refused to dismiss the case against EVB. Admittedly, the Court did

give Smith a road map on how to defeat EVB's quasi estoppel argument, <u>but this did not make</u>

<u>any of the facts Smith and Hurst submitted in their 4/14/10 and 4/15/10 affidavits any less true.</u>

As referenced above, as EVB's renewed motion specifically stated that Smith had the right to

rebut EVB's Renewed Motion with affidavits, there was nothing impermissible about

introducing new facts that had not been previously been asserted.  Prior to the Court's March 23,

2010 Memorandum Opinion, Defendants' advanced multiple and ever changing arguments  as to

why  the BOG Note was a not a  "debt" as defined by the FDCPA in nearly 1,700 pages of

documents filed with the Court.  The Court's Opinion Memorandum  narrowed all these issues to

just one issue, the quasi-estoppel argument. Smith was allowed a renewed opportunity to attack

this argument, and thus knowing the dispositive issue in the case, attacked this argument with

vigor in his April 16, 2010 Response to EVB's Renewed Motion.

---

[8] Smith is a pro-se litigant because he can't afford an attorney. Had Smith been represented by counsel,  perhaps more of the evidence Smith presented in his April 16, 2010 Response would have been presented prior to the February 26, 2010 hearing.

Having had time to construct his arguments and research old files (dating back 6 years),
Smith specifically attacked Defendants' quasi estoppel argument by introducing additional facts,
among these facts were 1) re-affirmation that Smith did not check the business box on the DRAs,
2) written correspondence to Mr. Mayhew at Main Street Mortgage specifically stating that the
purpose of the 2004 Piedmont Loan request was for personal purposes, 3) statements by Smith
that during the underwriting process Smith made representations that the Wilton Mortgage was a
personal loan, including tendering his tax returns which clearly stated that the Wilton Loan debt
would be applied to his existing personal mortgage, and 4) an affirmation by Smith that the
Piedmont Loan was anything other than what he had represented to the bank during the
underwriting process.

As stated in Smith's July 28, 2010 affidavit, Smith had never checked a DRA box in all
the loan documents he had signed and that the actual "check" was not his "mark."   Also as
stated in Smith's affidavit, Smith always viewed the issue over the Wilton DRA's as one of how
the loan was "characterized," and not one of Smith being estopped to claim that the Wilton Loan
was a personal loan, and in Smith's opinion, the dispositive issue based on the precedent in <u>Perk
v. Worden</u> was whether or not the end uses of the loan proceeds were used for personal, family
or household purposes not how the loan was labeled. As the Bank of Goochland checked the
business box on the  DRA's, (as Defendants are quite aware), and thus labeled the Wilton Loan
"business," Smith, in light of the many arguments that Defendants made as to why the BOG
Note was not a "debt," focused on the end uses argument, and had no need to state  in elaborate
detail a defense to an estoppel argument that had not never been raised prior to the 2/19 Filings.
Thus, in accord with <u>Perk,</u> how or why the BOG Note was characterized as a business debt was
simply not important. As the Court stated in <u>Perk</u>, the dispositive issue relating to  the primary

17

purpose of a loan are the end uses of the proceeds, and as stated in <u>In re Robb</u>, the dispositive

issue on whether an obligator is estopped from characterizing an obligation a particular way, is

how that obligator treats the obligation on his federal tax returns. It was not "objectively

unreasonable" for Smith to have believed that the "end uses tests" as developed in Perk "was

sufficiently grounded in law" (<u>Brubaker v. City of Richmond</u> at 1376) as to "trump" any

argument relating to how or why the 2004 Piedmont Loan was characterized ( thus sanctions are

not applicable).

      Smith having been given the opportunity to rebut Defendants' quasi-estoppel argument

per the Court's March 23, 2010 Order put forth genuine allegations of material fact to illustrate

that there was a "triable" dispute as to the representations that Smith made to the Bank of

Goochland concerning the purpose of the Piedmont Loan and as to Smith's understanding of the

DRAs. While the Court ruled that Smith was obligated to make these arguments before the

February 26th hearing and or the March 23, 2010 Memorandum Opinion Letter, there was

nothing in Smith's actions that indicated bad faith, <u>especially as he was specifically given the</u>

<u>right to put forth new evidence</u> and the new evidence was true. Smith had planned to put on

extensive evidence at trial in support of these issues and new evidence submitted.

      As stated in Smith's 7/28 Affidavit, had Defendants' submitted their quasi-estoppel

argument and legal precedent (including <u>County School Board</u> and <u>Heubusch</u> cases) as it did in

its 2/19 Filings on December 23, 2009 at the time that it filed its 12(b) (6) and 56 Motion, Smith

would have had time to comprehend Defendants' argument and respond in detail. Per Rule 11

standards, Smith's allegation that the BOG Note was a debt was supported by sufficient factual

allegations and a basis in law to support his claims. Furthermore, it cannot be said that Smith had

"absolutely no chance for success under existing precedent." <u>Cleveland Demolition</u>. "Rule 11

18

does not require that a judge or jury agree with a plaintiff's allegation. For Rule 11 purposes, the allegation merely must be supported by <u>some</u> (emphasis) evidence." <u>Brubaker v. City of Richmond</u>, 943 F. 2d 1363 (4th Cir. 1991). " Unless the Plaintiffs had no factual basis for their allegation, [the Court] cannot conclude that plaintiffs violated Rule 11 factual inquiry requirement" and are not subject to sanctions. <u>Id.</u> Defendants cite <u>Guidry v. Clare</u>, 442 F. Supp. 2d 282 (2006) as precedent for their motion for sanctions; however, the facts in that case are completely inapplicable to this case, as the core issue in <u>Guidry</u> was Plaintiffs' frivolous suit under the FDCPA over a $62 bad check; the several counts of the suit totally unsupported by <u>any</u> facts.

### (4) EVB's Harassment Argument

On page 6 of EVB's Motion for Attorney's Fees, it lists incidences of Smith's harassment of EVB which are not germane to the issues of this suit, and makes allegations that are simply untrue or are mischaracterizations of fact. While there is no need to respond to these unrelated and untrue allegations, Smith does feel compelled to respond to the central issue of the Hanover case which EVB cites. The dispositive issue in the Hanover case is whether or not EVB was obligated to pay or credit Smith's company $906,863. In an opinion letter, <u>the Court stated that the documents attached to the Complaint "clearly indicate" that EVB owed Smith's company $906,863 in September of 2007</u>. There is no dispute that EVB has refused to credit Smith's company this amount in September 2007. EVB is a publically traded company with audited financial statements, these financial statements clearly state that the debt Smith's company owed PCS was paid off in full in September 2007. The issues pending in Hanover relate to EVB concealing and misrepresenting this material fact to the Court. Smith has informed federal and state investigators about EVB's conduct in misrepresenting financial information, and these

entities, having found merit in these allegations have begun an investigation of EVB.  There is no

question that EVB's financial statements and representations to the Federal Reserve, Internal

Revenue Service, State Bank Examiners, Securities and Exchange Commission and its

shareholders confirm that Smith's company's debt to EVB was paid in September 2007 and EVB

stated to the Court in Hanover that this was not true. These issues are still pending in Hanover, as

well as EVB's refusal to turnover financial documents and EVB has mischaracterized these

proceedings to this Court.

     As Smith did not violate Rule 11, there is no need to consider the four factors adopted

by this circuit in In re Kuntsler. Moreover, Defendants have not provided any argument or

factual information regarding the elements of the "4 prong test" that would allow the Court to

make any sanction determination. ( See Brubaker at 1387) ).

     WHEREFORE, for the foregoing reasons, Smith requests that the Court dismiss

Defendants' Motion for Attorney's Fees.


Respectfully submitted,


_____

Robert C. Smith


Robert C. Smith
2800 Patterson Avenue
Suite 101
Richmond, Virginia 23221
Tel: 804-377-8848, ext. 4
Fax: 804-377-8851

## C E R T I F I C A T E

I hereby certify that on the ___ of  August, 2010 a true and correct copy of the foregoing response

to Defendants' Motion to Dismiss  has been sent by ECF  to counsel for EVB, S. Miles Dumville, Reed

Smith, Riverfront Plaza, West Tower, 901 East Byrd Street, Suite 1700, Richmond, Virginia  23219 and

also to counsel for Berkeley. Michele A. Mulligan McSweeney, Crump, Childress and Temple, P.C., 11

South 12th Street, P.O. Box 1463, Richmond, Virginia 23218.