UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

Case No. 10-1873 and 11-1081
(3:09-CV-00554)

ROBERT C. SMITH

    Appellant,

v.

EVB, et al.

    Appellee.

Case No. 10-1873, 11-1081
Appeal of Civil Action No. 3:09-CV-554

## **PLAINTIFF-APPELLANT'S REPLY TO RESPONSE**

COMES NOW, Appellant-Plaintiff Robert C. Smith (" Smith") and submits this Reply to Appellee-Defendants' ("Appellee" or "EVB and Berkeley"") Response and states as follows:

### I.   BACKGROUND

Smith filed this case in the Eastern District of Virginia (Richmond) on September 4, 2009. EVB did not file an Answer ( Doc. # 25) until March 30, 2010 and then only after being ordered to do so by the Trial Court. It is obvious from EVB's Answer why it refused to file a response, until ordered to do so. A review of Smith's Amended Complaint ( Doc # 8) and EVB's Answer indicates with startling clarity, EVB's incredible deceit, fraud and graft and illustrates the reasons

1

why EVB has devoted such resources to keep Smith's Fair Debt Collection Practices Act claim from being adjudicated on the merits. EVB's Answer to Smith's Amended Complaint admits the authenticity of all of Smith's exhibits and states that all these documents "speak for themselves." These admissions clearly indicate that:

a.  EVB "bought" the BOG Note with the "sole intention of foreclosing" on Smith's house. (Doc. # 8, Ex. F)

b.  That before EVB "bought" the BOG Note, it knew with certainty that it was not secured by Smith's house, as the entire Senior Credit Committee had been put on notice by Tom McKittrick that the BOG Note could not be secured by Smith's house. (Doc. # 8, Ex. C)

c.  McKittrick informed the Senior Credit Committee that "there were two material issues" that prevented the BOG Note from being secured by Smith's house. (Doc. #8, Ex. C).

d.  The "material issues" McKittrick disclosed to the Senior Credit Committee were that the BOG Note was in Smith's name and that the BOG could not be secured by a single obligation deed of trust that had previously secured a "specific note" which had been paid. McKittrick also disclosed to the entire Senior Credit Committee that the BOG Note was a credit line note which could not be secured by a single obligation deed of trust securing a "specific note" that had been paid off. (Doc. #8, Ex. C).

e.  EVB intended to foreclose on Smith's house, using the BOG Note, with the

2

full knowledge that it was not secured by Smith's house, but should Smith become aware of EVB's fraud and "the debt be contested" EVB could make the Bank of Goochland buy the BOG Note back. Obviously, both EVB and the Bank of Goochland knew the note was not secured by Smith's house. (Doc. #8, Ex. C).

f.  That a significant, if not overriding purpose in "buying" the BOG Note was to manufacture a foreclosure such that Jim Thomas' wife, Lynn, a residential relator could list Smith's house and make up to $72,000 in commissions. (Doc. #8, Ex. E). EVB admits that Jim Thomas is married to Lynn Thomas (Doc. #25, ¶ 25) and admits that Thomas is Chief Credit Officer of EVB, Senior Vice-President of EVB and a member of EVB's Board of Directors. ( Doc. #25, ¶ 24).

g.  EVB's other purpose in manufacturing a foreclosure on Smith's house for a debt that it knew with certainty was not secured by his house was simply to make money, by taking title to Smith's residence and then selling it for profit. ( See Mckittrick comments in Doc. #8, Ex. E, "[t]he plan is to market the house and hopefully make money…")

h.  EVB in an effort to keep Smith "in the dark" concerning the BOG Note and the fact that it was not secured by his house, never informed Smith that it had bought the BOG Note until it started foreclosure proceedings ( Doc. #25, ¶ 40) and 2) never gave Smith any documents relating to the purchase and security of the BOG Note until after Smith sued EVB in late June of 2009. ((Doc. #25, ¶ 41). Smith did not receive any of these documents until after

3

        EVB attempted to foreclose on his house 6 times. EVB's purposefully refused to disclose this information to Smith to conceal its fraud in attempting to foreclose on his residence for a debt that it knew with certainty was not secured by his residence.

i.    EVB also admits throughout its Answer the authenticity of all the bank statements Smith received from the bank ( Doc. #8, Ex. G, H and I). These documents clearly state that his loan balance under the BOG Note was at a zero or near zero balance during the entire 6 times EVB tried to foreclose on his house.

j.    EVB admits to the authenticity of a June 8, 2009 Foreclosure Letter it directed to Smith, through Appellee Berkeley, attempting to foreclose on his house, demanding a debt under the BOG Note of more than $475,000, while also admitting that Smith's bank statements indicated a balance of no more than $ 14,153.15 was owed on the BOG Note. ( Doc. #25, ¶ 80).

    Although EVB refused to directly answer many of the assertions in Smith's Amended Complaint, it is clear from their Answer what transpired: **The BOG Note specifically states that it is a debt as defined by the FDCPA**; used "primarily for personal, family or household purposes." EVB "bought" the note for the specific purpose of foreclosing on Smith's house, **knowing with certainty** that it was not secured by Smith's house ( for multiple reasons). The primary purpose in "buying" the BOG Note was such that EVB's Chief Credit Officer, Jim

4

Thomas and his wife could make $72,000 and for the bank to "make money" by manufacturing a foreclosure, taking title and "marketing" the house for sale. EVB refused to give Smith any documentation regarding the BOG Note for fear that Smith would discover its fraud. EVB attempted to foreclose on Smith's house 6 times for as much as $475,000 for a debt no greater than $14,153, **all the while knowing with certainty that the loan balance it stated was owed was wrong, and that the BOG Note could not possibly be secured by Smith's House.**

The astounding level of deceit, abuse, fraud and graft can hardly be denied, as EVB has answered: "the documents speak for themselves." Surely, this Court has recognized the high level of animosity between the litigants in this case. This is not a situation where EVB originated a loan that then went into default. **<u>EVB bought an existing note that specifically stated that it was debt as defined by the FDCPA.</u>** This is a situation where EVB deliberately sought to buy an existing loan, a loan that it did not have to buy, but voluntarily sought to purchase, for the "sole purpose " of manufacturing a foreclosure on Smith's house, where he lives with his 3 children, such that EVB can "make money" and Jim Thomas and his wife could make $72,000. **Smith and his family have been violated in the most egregious of manners, in a stunning exercise of fraud and deceit.** EVB's animosity no doubt stems from its dismay that Smith has fought back and has exposed EVB's fraud. EVB would have never have acted so transparently in its

5

illegal conduct, but for the fact that EVB thought it "could get away with fraud" because EVB could damage Smith such that he would be unable to hire counsel and put up a defense. **It is hard to imagine a situation more applicable to the legislative intent and clear meaning of the FDCPA.**

Smith obtained a law license in 1985, but never practiced law and did not keep an active law license until 2008, when he resolved to become re-licensed such that he could "fight back" against EVB. Smith is a businessman. He has used his law license merely as a tool to protect his family. He had never represented any party in Court before he sued EVB. Smith is certainly not a litigator, but he has borrowed over $50 million from commercial banks and paid it all back and never had a serious dispute with any lender, until EVB defrauded him in 2007 (See PCS Notes issue in previous appeals and reply briefs). EVB defrauded Smith out of his livelihood, and his children out of their inheritance, resulting in millions in damages.[1] Then EVB "bought" the BOG Note, a personal note in Smith's name,

---

[1] Smith's story is posted on his website, www.vatarpmoney.wordpress.com. Throughout EVB's Informal Response Brief, it distorts the truth and makes subtle misrepresentations to the Court. EVB states that it obtained a preliminary injunction to have published statements removed from Smith's website. EVB does not respond to the serious allegations of its fraud and deceit as posted on the website. Its 3.5 year refusal to tender Smith documents it is required by law to give Smith, but refuses to, is a deliberate and transparent effort to conceal its fraud. EVB also does not mention in its Response that it sued Smith for defamation, but when Smith served discovery on EVB concerning the exact same allegations of fraud for which EVB alleged it has been defamed, EVB refused to

and committed another fraud, by trying to foreclose on his house, as illustrated above.

Smith is no golden orator, and knows little about the nuances of litigation. He does know the difference between right and wrong and when taking a stand out of principle is necessary to protect one's reputation and family. **What EVB did was wrong, dishonest and fraudulent.** Smith's family and his children have been seriously damaged. EVB has not seriously contested Smith's allegations of wrong doing, its sole and only defense has been that the BOG Note is not a debt as defined by the FDCPA, **despite the uncontested fact that the BOG Note specifically states it is a "debt' as defined by the FDCPA**. It is abundantly clear for the reasons stated in Smith's Opening Brief and Reply Brief in 10-1873 that the BOG Note was/is a debt as defined by the FDCPA and that the Trial Court erred on this central issue and for this reason, it also erred in awarding EVB and Berkeley attorney fees.

## II.    EVB'S ASTOUNDING DUPLICITY

On March 23, 2010 (Doc.# 24), the Trial Court ordered EVB to file an Answer. On March 30, 2010, EVB filed its "Renew Motion To Dismiss Or, In The

---

answer **this discovery**. Thus, the "story" of www.vatarpmoney.wordpress.com is a "TARP Money" bank on the verge financial collapse spends, in excess of $ 1 million in taxpayer money in legal fees to conceal its fraud. EVB refuses to give sworn deposition testimony regarding its financial statements, and this is because all of the allegations on the website are true and EVB has been caught in a lie for all the world to witness.

7

Alternative, For Summary Judgment," (hereafter "Renewed Motion"). Pursuant to Local Rule 7 (k), Smith had 20 days to file a response and was entitled to offer affidavits and/or sworn statements in support of his response. In addition, on the front page of EVB's Renewed Motion, EVB specifically states:

1. You, as a pro-se party, are entitled to file a response opposing the Motion to Dismiss or, in the Alternative for Summary Judgment, filed by Defendant. Any such response must be filed within twenty (20) days of the date on which the dispositive or partially dispositive motion was filed;

2. The Court could dismiss this action on the basis of Defendant's papers if you do not file a response;

3. You, as a pro-se party, must identify all facts stated by Defendant with which you disagree and must set forth your version of the facts by offering affidavits (written statements signed before a notary public and under oath) or by filing sworn statements (bearing a certificate that it is signed under penalty of perjury); and

4. You, as a pro se party, are entitled to file a legal brief in opposition to the one filed by Defendant.

The FRCP and EVB's pleading **specifically gave Smith** the right to file affidavits and a detailed legal memorandum in response to EVB's Renewed Motion. As mentioned in Smith's Opening Brief (page 18), EVB and Defendant Berkeley violated FRCP 8( C) (1) by not raising the affirmative defense of estoppel in a timely manner. In fact, Appellees raised this defense four months late, after 8 pleadings and responsive pleadings had been filed with the Trial Court. Moreover, Local Rule 7 (F) ( 1) prevented Smith from even filing a response to Appellees'

8

"last minute argument" which Smith received <u>less than 5 days</u> before the hearing on Appellees' Motion For Summary Judgment. Most disturbing, despite Appellees' clear violation of FRCP 8 ( c) ( 1) to Smith's detriment, the new last minute estoppel argument that Appellees made in their "February 19 Filings," was the argument that the Trial Court based its March 23, 2010 decision granting Berkeley's Motion For Summary Judgment. However, when EVB filed its Renewed Motion and Smith was given the opportunity to respond with affidavits and sworn testimony, **<u>Smith exposed EVB's astounding duplicity if not EVB's deliberate Fraud on the Court</u>**.

In Smith's April 16, 2010 Response to EVB's Renewed Motion (Doc.# 29), he exposed in great detail EVB's duplicity and false statements made to the Trial Court. EVB repeatedly stated to the trial Court in voluminous pleadings filed with the Court that the BOG Note was a commercial/business loan and **<u>NOT</u>** a personal/consumer loan. **As Smith proved in the affidavits and exhibits attached to his April 16, 2010 Response, during the entire course of proceedings in the Trial Court, while EVB was making sworn statements that the BOG Note was a business loan, it was simultaneously reporting the <u>exact opposite</u> to federal and state bank examiners that the BOG Note was a personal/consumer loan.** (See Smith Affidavit and Exhibits contained in April 16, 2010 Response , Doc. #29). Indeed, Smith proved that EVB was carrying the BOG

9

Note on its books as a personal/consumer loan, had always carried the loan on its books as a personal/consumer loan and had been reporting it as such while it was making the **exact opposite** assertions of fact in **signed pleadings** to the Trial Court. ( EVB's deceit was purposeful because bank examiners and regulators value personal loans greater than business loans in loan loss reserve calculations).

Smith exposed this astounding duplicity, if not out right fraud upon the Court. Yet, Smith 'got his hand slapped' in the Trial Court's June 30, 2010 Memorandum Opinion (Doc.# 45) for introducing new evidence, even though he exposed EVB's fraudulent statements to the Court. The Court held in its December 22, 2010 Memorandum Opinion (Doc. 67, page 5) that Appellees were entitled to attorneys fees for the period after EVB filed its Renewed Motion, presumably, the Court reasoned: Smith should not have responded to EVB's Renewed Motion.

By sanctioning Smith for responding to EVB's Renewed Motion as he clearly had a right to and was told by EVB he had a right to in its Renewed Motion, Smith is effectively being punished by the Court for exposing EVB's duplicity and misrepresentations to the Court.

EVB and Berkeley's argument in their appeals is boiled down to this: " Yes, EVB lied to the Court, but we got away with it, so Smith should be sanctioned for exposing this lie to the Court.

### III.   LEGAL ANALYSIS OF RULE 11

10

Regardless of whether or not Smith filed his August 6, 2010 Response to EVB's Motion for Attorneys' Fees in a timely fashion, the Court still has an obligation to apply the correct legal standard to Appellees' motion. It did not do this.

Smith incorporates his Memorandum in Opposition ( Doc. # 58) to Appellees' Motion For Legal Fees into this Reply Brief which includes the O'Sullivan (Doc. # 58, Affidavit # 1) and Smith affidavits ( Doc. # 58, Affidavit # 2).[2] On pages 1-3, Smith lists the standards for sanction liability under the FDCPA. These standards are the same as under Rule 11:

> "The language of Rule 11 requires that an attorney conduct a reasonable investigation of the factual and legal basis for his claim before filing. See Cleveland Demolition Co. v. Azcon Scrap Corp., 827 F.2d 984, 987 (4th Cir.1987). Rule 11 "does not seek to stifle the exuberant spirit of skilled advocacy or to require that a claim be proven before a complaint can be filed." Cleveland Demolition Co., 827 F.2d at 988. "Rule 11 does not require that a judge or jury agree with a plaintiff's allegation. For Rule 11 purposes, the allegation merely must be supported by some (emphasis) evidence." Brubaker v. City of Richmond, 943 F. 2d 1363 (4th Cir. 1991). " Unless the Plaintiffs had no factual basis for their allegation, [the Court] cannot conclude that plaintiffs violated Rule 11 factual inquiry requirement" and are not subject to sanctions. Id. "[C]reative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment." Davis v. Carl, 906 F.2d 533, 536 (11th Cir.1990). A prefiling investigation of the law will not violate Rule 11 and the attorney will not be liable for sanctions unless the complaint has "absolutely no chance of success under the existing precedent." Cleveland Demolition Co., 827 F.2d at 988."

---

[2] These affidavits detail why the 2/19/10 estoppel argument was a new argument. And Smith was unfairly surprised. ( See specifically ¶ 27-28 of Smith Affidavit ((Doc. # 58). The Piedmont DRA was a completely different debt than the BOG Note EVB "bought" four years later.

11

"Sanctions are a two step process. Once the Court determines that Rule 11 has been violated, the amount of sanction, if any, is determined. "In calculating the sanction, a district court should bear in mind that the purposes of Rule 11 include "compensating the victims of the Rule 11 violation, as well as punishing present litigation abuse, streamlining court dockets and facilitating court management." In re Kuntsler, 914 F.2d at 522. The amount of a monetary sanction, however, should always reflect the primary purpose of Rule 11--deterrence of future litigation abuse. Id. at 522-23. Accordingly, a district court should expressly consider the four factors adopted by this circuit in In re Kuntsler: "(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the Rule 11 violation." Id. at 523 (citing White v. General Motors Corp., 908 F.2d 675 (10th Cir.1990)). Brubaker v. City of Richmond, 943 F. 2d 1363 (4th Cir. 1991). Pursuant to the following analysis, there are no grounds for sanctions against Smith and Defendants motion for sanctions must be dismissed."

Page 5 of Smith's Memo in Opposition addresses Smith's response to

EVB's Renewed Motion:

"On March 30, 2010, EVB filed its answer to Smith's Amended Complaint and also filed a new Motion To Dismiss or in the Alternative For Summary Judgment (hereafter "Renewed Motion"). This motion renewed allegations that the BOG Note was not a "debt" under the FDCPA and relied on its previous memorandum in support of its position filed on December 23, 2009 and offered no new evidence or new allegations. EVB's renewed Motion specifically stated that Smith was "entitled to file a response opposing" the Renewed Motion, that Smith "must identify all facts stated by Defendant" which Smith disagreed and that Smith "must set forth his version of the facts by offering affidavits" and that Smith "was entitled to file a legal brief in opposition" to EVB's Renewed Motion. (See page 2 of Renewed Motion). On April 16, 2010 Smith filed a Response in Opposition to EVB's Renewed Motion. Having not had the opportunity to respond to Defendants' estoppel arguments first raised in the 2/19 Filings, Smith's Response in Opposition was replete with details disputing the factual allegations underlying Defendants' estoppel arguments; these details were supported by affidavits by Smith and his accountant Hurst and included numerous additional exhibits. Smith's Response also included a detailed argument that the BOG Note was a "debt" as defined by the FDCPA as a "stand alone" transaction and a debt under the

12

"end uses" test. Concurrently, Smith filed a motion to alter the Court's March 23, 2010 Judgment under FRCP 59(e) in respect to Berkeley. Smith's "59 (e)" argument requested reconsideration of the Court's March 23, 2010 Order based primarily on the fact that Berkeley had violated the FRCP by failing to plead an "estoppel" defense in its answer and subsequent pleadings, thus Smith was prejudiced and unfairly surprised by Defendants' estoppel defense. Smith also pled in his "59 (e)" motion that the proper legal standards enumerated in Perk v. Worden, 475 F. Supp. 2d 565 (E.D. Va. 2007) were not properly applied."

By applying the standards of Cleveland Demolition Co. v. Azcon Scrap Corp., 827 F.2d 984, 987 (4th Cir.1987), Brubaker v. City of Richmond, 943 F. 2d 1363 (4th Cir. 1991) and Davis v. Carl, 906 F.2d 533, 536 (11th Cir.1990), it cannot be stated that Smith had no factual basis for his claim in his April 16, 2010 Response to EVB's Renewed Motion. In fact, the Court's fault with Smith's Response seems to be that Smith had **too much** factual basis and that this factual basis should have been introduced earlier, **never mind that this was the first time Smith had the opportunity to respond to EVB's new argument**. There can also be no contention that Smith's investigation of law "had no chance of success under existing precedent." Cleveland Demolition Co. It is not in dispute that both EVB and Berkeley repeatedly violated FRCP 8 ( C ) (1) and Smith offered an extensive memorandum ( Doc. # 31) ( and affidavit in Doc# 58) that he was unfairly surprised by EVB's new argument unleashed in 1,451 pages of filings **immediately before** the February 26, 2010 hearing at a point when Local Rule 7 (k) prevented Smith from even responding. As stated throughout Smith's

13

Response, Smith applied the above cited case law in exacting detail to all of his arguments after EVB's Renewed Motion.

On page 7, of Smith's Response, he also " pointed out" the inconsistencies of being sanctioned for "telling the truth" compared to EVB's actions:

> "During the pendency of this action, EVB and its counsel consistently and repeatedly represented to this Court that the BOG Note was a business loan and not a consumer loan. EVB and its counsel repeatedly derided Smith and accused him of making false statements in his claim that the BOG Note was a consumer loan. On April 16, 2010, Smith filed an extensive response to EVB's Renewed Motion which included uncontroverted evidence that EVB represented to its shareholders, the Federal Reserve and the Virginia Bureau of Financial Institutions that the BOG Note was a consumer loan and thus a debt as defined by the FDCPA. (See Ex. F: "EVB Loan Statement" and Exhibit G: "EVB Loan Line Sheet" of Smith's April 14, 2010 affidavit). As stated in ¶ 57 of Smith's affidavit and during the June 17, 2010 hearing, throughout the pendency of this suit when Defendants repeatedly represented to this Court that the BOG Note was a business loan, EVB simultaneously represented to federal and state bank examiners and its shareholders that the BOG Note was a consumer loan. Most telling, after Smith filed his April 16, 2010 response to EVB's Renewed Motion, Defendants had multiple opportunities to come forward and explain these misrepresentations to the Court and has left them unanswered. Certainly Defendants, having are precluded and estopped from their argument that Smith has acted in bad faith for alleging the exact same facts that EVB represented to its bank examiners and shareholders. Rule 11 (b) (4) states that "denials of factual contentions are warranted on the evidence or, ….are reasonably based on belief…." Defendants knew that during the pendency of this case, EVB was representing one set of facts to the Court and the exact opposite set of facts to its bank examiners. For this reason alone, Defendants' (EVB and Berkeley) Motion for Attorney's Fees should be dismissed."

Smith concluded his Response by stating:

> As Smith did not violate Rule 11, there is no need to consider the four factors adopted by this circuit in In re Kuntsler. Moreover, Defendants

14

have not provided any argument or factual information regarding the elements of the "4 prong test" that would allow the Court to make any sanction determination. ( See <u>Brubaker</u> at 1387)

For the reasons stated in Smith's Response and enumerated above, clearly the Court erred in awarding Appellees attorneys' fees as it applied none of the "first prong" applicable standards under Rule 11 and none of the "second prong" articulated in <u>In re Kuntsler</u>.

## IV. CONCLUSION

Smith has fought a long and hard battle with EVB. It may appear quixotic for a pro-se litigant, rendered practically penniless, who has never practiced law to sue a large TARP Money bank, represented by one of the largest law firms in the world. However, what EVB did was simply wrong, so egregiously wrong that one must act out of principle, if for no other reason than to prevent this type of wrong doing from occurring to the families of other borrowers. A careful review of Smith's Informal Opening Brief and Reply Brief in Case No. 10-1873, as well as Smith's Informal Opening Brief and (this) Reply Brief in Case No.11-1081, will reveal the inconsistencies of the Trail Court's decisions in accepting Appellees' last minute estoppel argument. The Trial Court simply erred.

Smith respectfully requests that this Court him the relief requested in both Case No. 10-1873 and in C1081 and for such other relief the Court may deem proper.

Respectfully Submitted,

Robert C. Smith
208 S. Wilton Road
Richmond, Virginia 23226
Tel: (804) 357-5977

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of March 2011, a copy of the foregoing **REPLY TO RESPONSE** was filed with the Clerk of the Court, served on Appellees by ECF and I also certify that I have served the same by first class mail and/or facsimile, addressed to the following:

S. Miles Dumville
**Reed Smith LLP**
Riverfront Plaza – West Tower
901 East Byrd Street; Suite 1700
Richmond, VA 23219
**Counsel for EVB**
Telephone: (804) 344-3400
Fax: (804) 344-3410

Michelle A. Mulligan
**MercerTrigiani**
116 South Second Street
Richmond, VA 23219
**Counsel for Berkeley**
Telephone: (804) 344-1504
Fax: (804) 644-0209

Robert C. Smith
208 S. Wilton Road

Richmond, Virginia 23226
Tel: (804) 357-5977